UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN LAPINE,

                Plaintiff,                                           Hon. Jane M. Beckering

v.                                                                        Case No. 1:19-cv-120

ROBERT LINCOLN, et al.,

                Defendants.

_____/

## **OPINION**

This matter is before the Court on Defendants Motions to Sever, Revoke *In Forma Pauperis* Status, and Dismiss.   (ECF No. 38 and 42).   For the reasons discussed herein, Defendants' motions will be granted in part and dismissed without prejudice in part.

## **BACKGROUND**

Plaintiff[1] initiated this action on February 14, 2019, against twelve named individuals and an unknown number of John and Jane Does.   (ECF No. 1).   As discussed below, many of Plaintiff's claims were subsequently dismissed.   With respect to the claims presently remaining in this matter, Plaintiff alleges the following.[2]

---

[1] When Plaintiff initiated this action, he was a prisoner within the custody of the Michigan Department of Corrections.    Plaintiff has since been released from custody.

[2] While Plaintiff does not identify his claims on a count-by-count basis, the Court does so below to make the subsequent analysis and discussion easier to follow.

A.    Count I

In September 2015, Plaintiff transferred to the Richard A. Handlon Correctional Facility (MTU).    On an unspecified date thereafter, Plaintiff was visited by an attorney after which Corrections Officer (CO) Robert Lincoln subjected Plaintiff to a strip search. While conducting this search, Lincoln stated to Plaintiff that "convicts shouldn't be allowed visits with attorneys."    Plaintiff later received a Notice of Intent for possessing "excess legal material" and "all [his] legal material was confiscated."    Plaintiff insinuates that his legal materials were confiscated at Lincoln's direction and alleges that Lincoln took this action for unlawful retaliatory reasons.

B.    Count II

On November 17, 2015, Resident Unit Manager (RUM) Charles Traylor met with Plaintiff to review a grievance.    Traylor instructed Plaintiff to "sign off this grievance." Plaintiff refused, in response to which Traylor told Plaintiff that he would transfer him to a different unit.    Plaintiff later overheard Traylor "talking trash about how B Unit is full of gang bangers and all sorts of gang and staff that are fowl (sic).    That robbing white boys, assaults and fights are an everyday thing."    Shortly thereafter, Plaintiff was transferred to B Unit.    Plaintiff alleges that Traylor transferred him to B Unit in retaliation for refusing to "sign off" on the grievance in question.

C.    Count III

On December 12, 2015, CO Lincoln sexually assaulted Plaintiff by "placing his hands on Plaintiff's penis/testicles and buttocks."   Lincoln performed this action in a "sexually deviant manner" for sexual gratification.   In response, Plaintiff "called the PREA hotline" and submitted a prison grievance.   Plaintiff alleges that Lincoln's actions violated his Eighth Amendment rights.

D.    Count IV

On December 15, 2015, CO Lincoln instructed another CO to search Plaintiff. Plaintiff alleges that Lincoln gave this instruction to retaliate against Plaintiff for submitting a PREA complaint following the December 12, 2015 incident in Count III.

E.    Count V

On December 22, 2015, CO Lincoln approached Plaintiff as he walked to the chow hall.   Lincoln "touch[ed]" Plaintiff's penis, testicles, and buttocks while stating to Plaintiff, "you want to write grievances on me, how does that feel[?]"   Lincoln then subjected Plaintiff to a "strip search" during which Lincoln ogled and stared at Plaintiff. Plaintiff alleges that Lincoln's actions were motivated by the intent to retaliate against Plaintiff for submitting a grievance.

F.    Count VI

On an unspecified date, CO Lincoln falsely charged Plaintiff with possession of stolen property after allegedly discovering "a large object hidden between Plaintiff's legs in his underwear."   This charge was later dismissed.   Plaintiff alleges that CO Lincoln falsely charged him with a misconduct for unlawful retaliatory reasons.

G.    Count VII

On December 27, 2015, CO Lincoln told Plaintiff, "I'm going to get you, your (sic) going to end up in the hole for writing me up."   Plaintiff alleges Lincoln's conduct violated his right to be free from unlawful retaliation.

H.    Count VIII

On February 10, 2016, Corrections Program Coordinator (CPC) Timothy Ball, CO Marc Tervo, CO Jeremy Hoppes, CO Jason Desjarden, Prison Counselor (PC) Ryan Reed, PC Maurice Williams, and RUM Traylor denied Plaintiff's requests to use the bathroom. As a result, Plaintiff urinated on himself.   Plaintiff alleges this violates his Eighth Amendment rights.

I.    Count IX

On an unspecified date, Plaintiff filed a grievance regarding the refusal by Defendants Ball, Tervo, Hoppes, Desjarden, Reed, Williams, and Traylor to allow him to use the bathroom.   After submitting this grievance, "those named [in the grievance] began to threaten Plaintiff on a daily basis."   Plaintiff alleges that this conduct violated his right to be free from unlawful retaliation.

-4-

J.    Count X

On one or more unspecified dates, an unknown number of John and Jane Does, members of the "MTU medical staff," failed to provide Plaintiff with medical treatment "for various issues."   Plaintiff alleges this violated his Eighth Amendment rights.

K.    Count XI

On March 1, 2016, a CO conducted a pat-down search of Plaintiff.   While this search was ongoing, CO Desjarden stated to Plaintiff, "give me your I.D., that's a sexual misconduct."   Desjarden, alleging that Plaintiff "thrusted his hips and groin area forward and back" while being searched, falsely charged Plaintiff with sexual misconduct.   A subsequent investigation "cleared" Plaintiff of any misconduct.   In response, Defendant Desjarden retaliated against Plaintiff by seeking to have a group of Muslim prisoners "take Plaintiff out."

L.    Count XII

On March 8, 2016, Plaintiff was assaulted by another prisoner after which Plaintiff was "drug to segregation."   Lieutenant Dan Hall later spoke with Plaintiff about the assault.   Hall denied Plaintiff's request for medical treatment in violation of his Eighth Amendment rights.

M.    Count XIII

Following his March 8, 2016 assault, Plaintiff submitted "several kites" requesting medical treatment which were denied by an unknown number of John and Jane Does in violation of his Eighth Amendment rights.

N.    Count XIV

Following his March 8, 2016 assault, Plaintiff remained in segregation for three weeks during which time he was forced to sleep on mattress which "made [his] already traumatized spine spike in unbearable pain."   Plaintiff alleges this circumstance violated his Eighth Amendment rights.

O.    Count XV

On an unknown date "about the end of March or beginning of April 2016," Plaintiff was transferred to IBC.   Upon Plaintiff's arrival at IBC, CO Unknown Kerr stated to Plaintiff, "so you want to write grievances and PREA complaints. . .your (sic) not going to be here long doing that."   Plaintiff alleges this encounter violated his right to be free from unlawful retaliation.

P.    Count XVI

On an unknown date, Plaintiff submitted a grievance requesting medical treatment for the injuries he sustained during his March 8, 2016 assault.   An unidentified Jane Doe responded by instructing Plaintiff to request medical treatment by submitting a kite.   Plaintiff later submitted several kites, but still received no medical care.   Plaintiff subsequently spoke directly with a nurse and reiterated his request for medical treatment.   This unknown nurse responded by instructing Plaintiff to submit another kite.   Plaintiff again submitted kites requesting health care, but he still did not receive any medical treatment.   Plaintiff later spoke with a nurse who responded to Plaintiff's request for medical treatment by informing Plaintiff that he

-6-

"would be called back out by a provider."   Plaintiff was never called out or treated by any care provider.   Plaintiff alleges that these refusals to provide him with medical care violated his Eighth Amendment rights.

Q.    Count XVII

On April 20, 2016, Plaintiff went to health care for "a medical appointment with nursing."   After watching approximately 20 other inmates receive medical care, Plaintiff asked CO Kerr, "am I going to see medical, I'm way past my callout time?" Kerr responded, "you've been here 3 times, nothing is wrong with you, you can sign off and leave or wait."   Plaintiff responded to Kerr by stating, "I'm not signing off.   I need to be seen by a provider" and "if not, I'm going to file my grievances, and if no response, I will file suit again."   In response, Kerr falsely charged Plaintiff with threatening behavior.   Plaintiff alleges that Kerr took this action for unlawful retaliatory reasons.

Because Plaintiff has previously filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, the Court concluded that Plaintiff was not permitted to pursue the present action as a pauper and instead must pay the $400 civil filing fee.   (ECF No. 3-4).   The Court further concluded that Plaintiff did not satisfy the imminent danger exception to the three strikes rule.   (*Id.*).   Plaintiff appealed the matter to the Sixth Circuit, which ruled that the Court improperly found that Plaintiff did not satisfy the imminent danger exception.[3]   (ECF No. 15).

---

[3] Specifically, the court concluded that Plaintiff's claims of denial of medical treatment, access to a bathroom, and mattress-induced pain were sufficiently related to his

Following remand, the Court granted Plaintiff's motion to proceed as a pauper and then dismissed many of Plaintiff's claims for failure to state a claim.    (ECF No. 18-20).    At this juncture, the claims articulated above remain.    Defendants Ball, Desjarden, Hall, Hoppes, Lincoln, Reed, Traylor, Tervo, Williams, and Kerr now move to: (1) sever Plaintiff's claims; (2) revoke Plaintiff's IFP status; and (3) dismiss this lawsuit in its entirety.    Plaintiff has responded to Defendants' motion.

## I.    Misjoinder

As the discussion above reveals, Plaintiff has initiated this lawsuit against numerous individuals concerning unrelated events occurring in different locations over a roughly one-year period.    Whether Plaintiff can join multiple defendants in a single action is governed by Federal Rule of Civil Procedure 20(a)(2):

> (2)    Defendants.    Persons. . .may be joined in one action as defendants if:
>
> (A)    any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B)    any question of law or fact common to all defendants will arises in the action.

---

allegations of spine disease that the imminent danger exception was satisfied, at least as to those claims.

Whether a plaintiff is permitted to join multiple defendants in a single action "is a matter for the discretion of the district court."  *Third Degree Films, Inc. v. John Does 1-72*, 2013 WL 1164024 at *5 (E.D. Mich., Mar. 18, 2013).   This is a fact-specific inquiry undertaken on a case-by-case basis.   *See, e.g., LaPine v. City of Detroit*, 2022 WL 107585 at *5 (E.D. Mich., Jan. 10, 2022).   When conducting this analysis, the Court must ensure that Plaintiff not be permitted to avoid the requirements of the Prison Litigation Reform Act (PLRA) through the "creative joinder of actions."  *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *see also*, *Burley v. Weller*, 2022 WL 1667028 at *3 (E.D. Mich., May 25, 2022) ("[p]ermitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which is to reduce the large number of frivolous lawsuits").   Plaintiff bears the burden to demonstrate that the requirements of Rule 20(a)(2) are satisfied.   *Third Degree Films,* 2013 WL 1164024 at *5.

Misjoinder is not a basis to dismiss an action.   Fed. R. Civ. P. 21.   Instead, when faced with misjoinded parties, the Court may (1) drop misjoined parties from the case on terms that are just, or (2) sever any claims against misjoined parties so that such may be pursued in separate actions.   *See Jones v. Trinity Food Service Group*, 2019 WL 7821257 at *9 (W.D. Mich., Dec. 5, 2019).   Furthermore, even if the requirements of Rule 20(a)(2) are satisfied, "courts maintain the discretion to sever defendants under Rules 20(b), 21, and 42(b)."  *Third Degree Films,* 2013 WL 1164024 at *5.   Thus, when exercising its discretion to sever or permit joinder, "the court should examine whether permissive joinder would comport with the principles of fundamental fairness or would result in

prejudice to either side and may also consider factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved." *Ibid.*

### A.    Counts I and III-VII

When analyzing whether the joinder of parties is appropriate, the Court begins by considering the first claim Plaintiff asserts against the first named defendant.    *See, e.g.,* *Proctor v. Applegate*, 661 F.Supp.2d 743, 778 (E.D. Mich. 2009); *Mims v. Erickson*, 2022 WL 1153133 at *4 (W.D. Mich., Apr. 19, 2022).    Here, the first claim in Plaintiff's complaint, Count I, is that Defendant Lincoln subjected him to unlawful retaliation. Specifically, Plaintiff alleges that Lincoln was involved in the confiscation of his legal materials.    Plaintiff asserts five additional claims against Lincoln – Counts III-VII. Regardless whether these claims satisfy Rule 20(a)(2), such are all properly asserted in the same action as Count I by virtue of Rule 18(a) which provides that a party "may join . . . as many claims as it has against an opposing party."    Fed. R. Civ. P. 18(a).    But none of Plaintiff's claims against any other defendant satisfy the requirements of Rule 20(a)(2).

### B.    Count II

Plaintiff alleges that Defendant Traylor subjected him to unlawful retaliation. Specifically, Plaintiff alleges that Traylor transferred him to a different housing unit in retaliation for refusing to "sign off" on a grievance asserted against "PC Williams over a DVD in a case."    (ECF No. 1, PageID.3).    This claim does not arise out of the same

transaction, occurrence, or series of transactions or occurrences as Count I.   This claim involves different individuals and circumstances and is based on events occurring approximately two months after the events in Count I.   As courts recognize, "if the same issues of fact would determine both claims, they arise out of the same transaction or occurrence, but if the proof of one claim would have no connection with the proof of the other, the claims do not arise out of the same transaction or occurrence."  *CH Liquidation Association Liquidation Trust v. Genesis Healthcare System*, 2020 WL 2850283 at *2 (N.D. Ohio, June 2, 2020).   Accordingly, the Court finds that Plaintiff's attempt to join Defendant Traylor in an action with Defendant Lincoln, based upon this particular claim, fails to satisfy Rule 20(a)(2).

C.    Counts VIII-IX

Plaintiff alleges that Defendants Ball, Tervo, Hoppes, Desjarden, Reed, Williams, and Traylor denied his requests to use the bathroom in violation of his Eighth Amendment rights.   Plaintiff further alleges that, after filing a grievance regarding this matter, "those named [in the grievance] began to threaten" him in violation of his right to be free from unlawful retaliation.   None of these claims arise out of the same transaction, occurrence, or series of transactions or occurrences as Count I.   Accordingly, the Court finds that Plaintiff's attempt to join Defendants Ball, Tervo, Hoppes, Desjarden, Reed, Williams, and Traylor in an action with Defendant Lincoln, based upon these claims, fails to satisfy Rule 20(a)(2).

D.    Count X

Plaintiff alleges that, on one or more unspecified dates, an unknown number of John and Jane Does, members of the "MTU medical staff," failed to provide him with medical treatment "for various issues" in violation of his Eighth Amendment rights. None of these claims arise out of the same transaction, occurrence, or series of transactions or occurrences as Count I.  Accordingly, the Court finds that Plaintiff's attempt to join these Doe Defendants in an action with Defendant Lincoln, based upon these claims, fails to satisfy Rule 20(a)(2).

E.    Count XI

Plaintiff alleges that, on or about March 1, 2016, Defendant Desjarden retaliated against Plaintiff by seeking to have a group of Muslim prisoners "take Plaintiff out." This claim does not arise out of the same transaction, occurrence, or series of transactions or occurrences as Count I.  Accordingly, the Court finds that Plaintiff's attempt to join Defendant Desjarden in an action with Defendant Lincoln, based upon this claim, fails to satisfy Rule 20(a)(2).

F.    Counts XII-XIV

Plaintiff alleges that, on or about March 8, 2016, Defendant Hall refused his requests for medical treatment following an assault by another prisoner.  Plaintiff also alleges that subsequent requests for medical treatment were denied by an unknown number of John and Jane Does.  Plaintiff further alleges that he remained in segregation for three weeks during which time he was forced to sleep on mattress which

-12-

exacerbated his back injury in violation of his Eighth Amendment rights.    None of these claims arise out of the same transaction, occurrence, or series of transactions or occurrences as Count I.    Accordingly, the Court finds that Plaintiff's attempt to join Defendant Hall or these Doe Defendants in an action with Defendant Lincoln, based upon these claims, fails to satisfy Rule 20(a)(2).

G.    Count XV

Plaintiff alleges that, on an unknown date in March or April 2016, Defendant Kerr threatened him in violation of his right to be free from unlawful retaliation.    This claim does not arise out of the same transaction, occurrence, or series of transactions or occurrences as Count I.    Accordingly, the Court finds that Plaintiff's attempt to join Defendant Desjarden in an action with Defendant Lincoln, based upon this claim, fails to satisfy Rule 20(a)(2).

H.    Count XVI

Plaintiff alleges that, on unknown dates, his requests for medical treatment were denied by unknown John and Jane Does in violation of his Eighth Amendment rights. None of these claims arise out of the same transaction, occurrence, or series of transactions or occurrences as Count I.    Accordingly, the Court finds that Plaintiff's attempt to join these Doe Defendants in an action with Defendant Lincoln, based upon these claims, fails to satisfy Rule 20(a)(2).

I.    Count XVII

Plaintiff alleges that, on April 20, 2016, Defendant Kerr falsely charged him with a misconduct in violation of his right to be free from unlawful retaliation.   This claim does not arise out of the same transaction, occurrence, or series of transactions or occurrences as Count I.   Accordingly, the Court finds that Plaintiff's attempt to join Defendant Kerr in an action with Defendant Lincoln, based upon this claim, fails to satisfy Rule 20(a)(2).

Accordingly, the Court finds that the only claims properly asserted in this action are Plaintiff's claims against Defendant Lincoln – Counts I and III-VII.   The remaining (surviving) claims articulated in Plaintiff's complaint will be severed from the present action so that such can be pursued separately.   But, because these remaining claims cannot, consistent with Rule 20(a)(2), be pursued in a single action, the Court will sever the claims in question into two separate actions.

The Court declines to dismiss any of these severed claims as it is unclear whether Plaintiff would be time barred from re-asserting them in a separate action.   *See, e.g., Gallegos v. Merced Irrigation District*, 2016 WL 6896572 at *2 (E.D. Cal., Nov. 23, 2016) (it violates Rule 21 to dismiss, on misjoinder grounds, a claim the plaintiff would be time barred from reasserting).   Defendants have offered neither evidence nor argument on this particular question and, therefore, have failed to persuade the Court that dismissal, rather than severance, is the appropriate course of action.

-14-

Of the two new cases created from Plaintiff's misjoinded claims, one (New Case #1) will be based on Plaintiff's remaining Eighth Amendment claims – Counts VIII, X, XII-XIV, and XVI.   While these claims involve several different individuals in different locations, the resolution of these claims all involve Plaintiff's injuries and/or medical conditions and the treatment he has received for such.   Combining these claims into a single action promotes efficiency and judicial economy.   *See, e.g., CH Liquidation*, 2020 WL 2850283 at *2 (the "series of transactions and occurrences analysis is a flexible standard that enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief to be tried in a single proceeding"); *Harnage v. Lightner*, 916 F.3d 138, 142-43 (2d Cir. 2019) ("even though Harnage's [Eighth Amendment] allegations span several years and invoke several defendants, they all arise from the alleged failure" to provide adequate medical treatment and, therefore, satisfy Rule 20(a)(2)).   The Court finds, therefore, that these Eighth Amendment claims all arise from the same series of transactions or occurrences and concern common questions of law and fact.   Counts IX and XI will be added to New Case #1 pursuant to Rule 18(a).

This leaves Plaintiff's two retaliation claims against Defendant Kerr – Counts XV and XVII.   These claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences as any of the Eighth Amendment claims which make up New Case #1.   Thus, joinder of Defendant Kerr to New Case #1 is not appropriate under Rule 20(a)(2).   Accordingly, these two claims must be litigated in a separate action (New Case #2).

-15-

## II.    Motions to Revoke IFP Status and Dismiss

In addition to moving the Court to sever Plaintiff's complaint on misjoinder grounds, Defendants also move the Court to revoke Plaintiff's IFP status and dismiss Plaintiff's complaint.   Having found that severance of Plaintiff's claims into three separate actions is appropriate, the Court finds that resolution of Defendants' motion to revoke IFP and dismiss must be deferred until the present case has officially been transformed into three separate cases as detailed herein.   The reason for this approach should be apparent.   To the extent Plaintiff's claims must be pursued in a separate action (New Case #1 or New Case #2), it would be improper for this Court to address motions related to such because neither of these new cases have even been established. Defendants have identified no authority supporting the proposition that the Court can resolve a motion or legal question in a case that has not yet been established (and which may not even be assigned to the undersigned judicial officer).   Moreover, the resolution of Defendants' motions may be impacted by what specific claims are asserted in any one action.   Thus, resolution of these motions, at this juncture, is not proper.   Accordingly, Defendants' motions to revoke IFP status and dismiss will be dismissed without prejudice.   Defendants may reassert these motions and issues once the new two cases described herein have been established and Plaintiff's claims assigned to the appropriate action.

## <u>CONCLUSION</u>

For the reasons discussed herein, Defendants' motion to sever is hereby granted. Plaintiff's remaining claims will be severed into three cases as follows: (1) Counts I and III-VII will remain in the present action; (2) Counts VIII-XIV and XVI will be severed and adjudicated in a separate action (New Case #1); and (3) Counts XV and XVII will be severed and adjudicated in a separate action (New Case #2).  Defendants' motions to revoke IFP status and dismiss are dismissed without prejudice, with Defendants being permitted to reassert such once the present claims are divided into three separate cases as described herein.

**IT IS SO ORDERED.**

Date: July 25, 2022                          /s/ Phillip J. Green
                                                   PHILLIP J. GREEN
                                                   United States Magistrate Judge

-17-