UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN LAPINE,

        Plaintiff,                          Hon. Paul L. Maloney

v.                                              Case No. 1:22-cv-675

ROBERT LINCOLN, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motions for Partial Summary Judgment. (ECF No. 70). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted.

## BACKGROUND

Plaintiff[1] initiated this action on February 14, 2019, against twelve named individuals and an unknown number of John and Jane Does. (ECF No. 1). Many of Plaintiff's claims were subsequently dismissed. (ECF No. 19-20). Plaintiff's

---

[1] When Plaintiff initiated this action, he was a prisoner within the custody of the Michigan Department of Corrections. Plaintiff has since been released from custody.

-1-

remaining claims were later severed into three separate actions. (ECF No. 48-49). The claims remaining in this action are as follows.[2]

### A.    Count 2

On November 17, 2015, Resident Unit Manager (RUM) Charles Traylor met with Plaintiff to review a grievance. Traylor instructed Plaintiff to "sign off this grievance." Plaintiff refused, in response to which Traylor told Plaintiff that he would transfer him to a different unit. Plaintiff later overheard Traylor "talking trash about how B Unit is full of gang bangers and all sorts of gang and staff that are fowl (sic). That robbing white boys, assaults and fights are an everyday thing." Shortly thereafter, Plaintiff was transferred to B Unit. Plaintiff alleges that Traylor transferred him to B Unit in retaliation for refusing to "sign off" on the grievance in question.

### B.    Count 8

On February 10, 2016, Corrections Program Coordinator (CPC) Timothy Ball, Corrections Officer (CO) Marc Tervo, CO Jeremy Hoppes, CO Jason Desjarden, Prison Counselor (PC) Ryan Reed, PC Maurice Williams, and RUM Traylor denied Plaintiff's requests to use the bathroom. As a result, Plaintiff urinated on himself. Plaintiff alleges this violates his Eighth Amendment rights.

---

[2] As the Court has previously noted, while Plaintiff does not identify his claims on a count-by-count basis, the Court does so for the sake of clarity.

C. Count 9

On an unspecified date, Plaintiff filed a grievance regarding the refusal by Defendants Ball, Tervo, Desjarden, Hoppes, Reed, Williams, and Traylor to allow him to use the bathroom. After submitting this grievance, "those named [in the grievance] began to threaten Plaintiff on a daily basis." Plaintiff alleges that this conduct violated his right to be free from unlawful retaliation.

D. Count 10

On one or more unspecified dates, an unknown number of John and Jane Does, members of the "MTU medical staff," failed to provide Plaintiff with medical treatment "for various issues." Plaintiff alleges this violated his Eighth Amendment rights.

E. Count 11

On March 1, 2016, a CO conducted a pat-down search of Plaintiff. While this search was ongoing, CO Desjarden stated to Plaintiff, "give me your I.D., that's a sexual misconduct." Desjarden, alleging that Plaintiff "thrusted his hips and groin area forward and back" while being searched, falsely charged Plaintiff with sexual misconduct. A subsequent investigation "cleared" Plaintiff of any misconduct. In response, Defendant Desjarden retaliated against Plaintiff by seeking to have a group of Muslim prisoners "take Plaintiff out."

F.   Count 12

On March 8, 2016, Plaintiff was assaulted by another prisoner after which Plaintiff was "drug to segregation." Lieutenant Dan Hall later spoke with Plaintiff about the assault. Hall denied Plaintiff's request for medical treatment in violation of his Eighth Amendment rights.

G.   Count 13

Following his March 8, 2016 assault, Plaintiff submitted "several kites" requesting medical treatment which were denied by an unknown number of John and Jane Does in violation of his Eighth Amendment rights.

H.   Count 14

Following his March 8, 2016 assault, Plaintiff remained in segregation for three weeks during which time he was forced to sleep on mattress which "made [his] already traumatized spine spike in unbearable pain." Plaintiff alleges this circumstance violated his Eighth Amendment rights.

I.   Count 15

On an unknown date, Plaintiff submitted a grievance requesting medical treatment for the injuries he sustained during his March 8, 2016 assault. An unidentified Jane Doe responded by instructing Plaintiff to request medical treatment by submitting a kite. Plaintiff later submitted several kites, but still received no medical care. Plaintiff subsequently spoke directly with a nurse and reiterated his request for medical treatment. This unknown nurse responded by instructing Plaintiff

to submit another kite. Plaintiff again submitted kites requesting health care, but he still did not receive any medical treatment. Plaintiff later spoke with a nurse who responded to Plaintiff's request for medical treatment by informing Plaintiff that he "would be called back out by a provider." Plaintiff was never called out or treated by any care provider. Plaintiff alleges that these refusals to provide him with medical care violated his Eighth Amendment rights.

Defendants Traylor, Ball, Tervo, Hoppes, Reed, Williams, and Hall now move to dismiss Counts 9, 11-14, and 16 on the ground that Plaintiff has failed to properly exhaust his administrative remedies.[3] Plaintiff has failed to respond to the motion. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no

---

[3] While Plaintiff is no longer in MDOC custody, he was incarcerated when he initiated this action. Accordingly, the exhaustion requirement articulated in the Prison Litigation Reform Act applies to Plaintiff's claims. *See, e.g., Hicks v. Haynie*, 2020 WL 8474737 at *4 (W.D. Mich., Dec. 21, 2020).

evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the

evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). This obligation only extends, however, to such administrative remedies as are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019). The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019). If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

Defendants have submitted evidence demonstrating that Plaintiff has failed to exhaust the claims asserted in Counts 9, 11-14, and 16. (ECF No. 71 at PageID.313-592). Plaintiff has failed to respond to the present motion and, therefore, has failed to refute or call into question Defendants' argument or evidence. Plaintiff has likewise failed to present any evidence otherwise demonstrating that there exists a genuine factual dispute on the question whether he properly exhausted his administrative remedies regarding the claims asserted in Counts 9, 11-14, and 16. Accordingly, the undersigned recommends that Counts 9, 11-14, and 16 be dismissed without prejudice for failure to exhaust administrative remedies.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motions for Partial Summary Judgment (ECF No. 70) be granted and Counts 9, 11-14, and 16 be dismissed without prejudice for failure to exhaust administrative remedies. For the same reasons the undersigned makes this recommendation, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438,

445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: March 27, 2023

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge